# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

KEVIN WALKER

VERSUS

ENERGY TRANSFER
PARTNER, LLC

CIVIL ACTION NO. 5:18-CV-0630

JUDGE ELIZABETH ERNY FOOTE

MAGISTRATE JUDGE HAYES

## MEMORANDUM RULING

Before the Court is Defendant's motion for summary judgment. [Record Document 15]. Plaintiff opposed the motion and Defendant filed a reply. [Record Documents 17-1 and 20]. Plaintiff also filed a motion to strike evidence submitted to support Defendant's motion for summary judgment. [Record Document 18]. Defendant opposed the motion. [Record Document 21]. For the reasons stated herein, Defendant's motion for summary judgment is **GRANTED**. Plaintiff's motion to strike is **DENIED**.

## BACKGROUND

Defendant Energy Technology Partners, LLC ("ETP") owns and operates a variety of "energy assets," one of which is the Dubberly Plant in Dubberly, Louisiana. [Record Document 17-2 at 1]. Plaintiff Kevin Walker ("Walker") began his employment at the Dubberly Plant in July 2016 as an "Operator 'B'" whose job description included operating and maintaining plant equipment and working with the "Plant Control room operating system." [Record Documents 15-5 at 9 and 17-2 at 4]. Starting in September 2016, Plaintiff began working twelve-hour shifts with Joshua Starkey ("Starkey"). [Record Document 17-2 at 7-8].

According to ETP, on January 20, 2017, Starkey reported to his and Walker's supervisor, James McClain ("McClain"), that Walker consistently slept during night shifts, sometimes for more than six hours of the shift. [Record Documents 15-8 at 4-5 and 17-2 at 6]. He informed McClain that during their January 19, 2017 shift together, Walker slept and refused to help despite the pair being particularly busy and experiencing issues with the plant. [Record Document 15-8 at 3-4]. McClain asked Starkey to submit a written summary of these incidents during his next scheduled shift, which Starkey did on January 24, 2017. [Record Documents 15-8 at 5 and 15-4 at 3]. Attached to the summary were two pictures of Walker sleeping, taken in September and November of 2016, and a screenshot of a video portraying the same, taken in October 2016. [Record Document 15-8 at 2-3, 5, 7-10]. McClain supplemented Starkey's handwritten summary with information Starkey verbally told him on January 20, 2017, asked Starkey to verify its accuracy, and typed Starkey's handwritten report at the bottom of the page. [Record Documents 15-5 at 4 and 15-8 at 5, 10].

On the morning of January 24, 2017, before Starkey wrote the summary, Walker reported to work and requested leave for personal reasons. [Record Document 17-2 at 13-14]. McClain approved this without determining whether the leave would be protected by the Family Medical Leave Act ("FMLA") and reported the leave to his supervisor, Todd McKee ("McKee"). [Record Documents 15-5 at 3-4, 15-6 at 1, and 17-5 at 15-16]. McClain later emailed Starkey's written report and images to McKee, who subsequently passed the information along to Human Resources Manager DeeDee Miller ("Miller"). [Record Documents 15-5 at 4, 15-6 at 2]. According to McKee, he "immediately determined that ETP could not have an employee sleeping on the job," but delayed addressing the issue until Walker returned from leave on advice

from Miller and the Senior Director of Human Resources, Erica Brandt ("Brandt"). [Record Document 15-6 at 2].

Walker disputes several of the aforementioned facts. According to Walker, he reported to McClain in September 2016 that other employees, including Starkey, were sleeping at work. [Record Document 17-4 at 18-19, 37-38]. All parties agree that no action was taken against any of these employees, though McClain denies receiving such reports. [Record Documents 15-5 at 6-7 and 17-2 at 22-23]. Walker denies ever sleeping at work. [Record Document 17-4 at 32-33]. He also notes that Starkey was unsure of whether McClain asked him to produce a written summary of his report on January 20 or after Walker requested leave on January 24. [Record Document 17-7 at 10].

It is undisputed that ETP's third-party administrator in charge of FMLA leave, Hartford, approved Walker for FMLA leave from January 29, 2017 to March 12, 2017. [Record Document 15-7 at 5, 17-2 at 16-17]. While on leave, Walker received FMLA and ETP Short-Term Disability Benefits. [Record Document 17-2 at 17]. ETP also distributed bonuses to its employees during this time and Walker's bonus was reduced by $1,000. [Record Document 17-2 at 17]. According to ETP, bonus payments are discretionary, and Walker's was reduced because he slept on the job and because of other undocumented performance issues. [Record Documents 15-5 at 4 and 17-2 at 17].

While Walker was still on leave, McKee spoke with Brandt about how to address the report that Walker slept on the job. [Record Document 15-6 at 3]. She recommended that Walker be terminated for violation of ETP's Workplace Conduct Policy because he "repeatedly and excessively" slept at work, the pictures demonstrated that this conduct was intentional, and

sleeping on the job posed a safety risk to Walker, his coworkers, and ETP. [Record Document 15-7 at 6]. McKee agreed with Brandt's recommendation. [Record Document 15-6 at 3]. Both state that this decision was based solely on Walker's "performance issues" before he went on leave. [Record Documents 15-6 at 3-4, 15-7 at 6].

Walker was cleared to return to work and did so on March 13, 2017. [Record Document 17-2 at 17-19]. Upon arriving, he met with McClain and McKee, while Miller participated by phone. [Record Document 17-2 at 19]. According to McKee, he informed Walker that his employment was being terminated for sleeping on the job, Walker did not deny this, and in fact confirmed that he was the individual in the photographs. [Record Document 15-6 at 4]. According to Walker, he was not provided a reason for his termination until he asked for one and he was never specifically asked if he slept at work. [Record Document 17-4 at 34-36]. He admits that during the meeting he acknowledged that he was the person pictured in at least one of the images. [Record Document 17-4 at 35].

Plaintiff received notice of his right to sue and filed the instant suit alleging that ETP violated the interference and discrimination clauses of the FMLA, the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA"). [Record Documents 1 and 33].

## LAW AND ANALYSIS

### I.  Plaintiff's Motion to Strike

The Court will first address Walker's motion to strike. [Record Document 18]. Walker challenges ETP's use of three images with Bates numbers RFA002-RFA004 entered in the record by ETP at Record Documents 15-5 at 11-13, 15-6 at 9-11, 15-7 at 39-41, 15-8 at 7-9, and

15-10 at 15-17. [Record Document 18]. Walker argues that these images are inadmissible as summary judgment evidence because they lack authentication and, second, are irrelevant. [Record Document 18-1 at 1-2].

The general authentication requirement is governed by Federal Rule of Evidence 901. As stated in this rule, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. The Rule goes on to list several examples of ways a party might satisfy this requirement, one being testimony by a witness with knowledge that the evidence "is what it is claimed to be." Fed. R. Evid. 901(b)(1).

Defendant submitted several declarations by Starkey and Michael "Adam" Remedies ("Remedies") to authenticate the images at issue. Starkey's declaration individually addresses each of the images. [Record Document 15-8 at 2-3]. As to the first image,[1] Starkey states that it is a "true and correct copy" of the photograph he personally took using his cellphone on September 12, 2016. [Record Document 15-8 at 2, ¶ 5]. He further states that he took the photo as he was witnessing Walker sleep. [*Id.*] This is sufficient evidence for the Court to conclude that the image is what ETP claims it to be—a photograph of Walker allegedly sleeping at work on September 12, 2016.

Starkey's declaration similarly addresses the third image at issue. Starkey states that on November 30, 2016, he "witnessed and photographed (on [his] cellphone) Walker asleep" while at work. [Record Document 15-8 at 3, ¶ 7]. He again declares that the photograph, as attached

---

[1] The image is identified in and attached to Starkey's declaration as Exhibit 5-1. [Record Document 15-8 at 7].

to his declaration,[2] is a "true and correct copy" of the photograph he took that night. [*Id.*] This is sufficient evidence for the Court to conclude that the image is what ETP claims it to be—a photograph of Walker allegedly sleeping at work on November 30, 2016.

The second image at issue can be authenticated through a combination of Starkey's and Remedies's declarations. Remedies states that on October 14, 2016, he witnessed and took a video of Walker sleeping at work. [Record Document 15-9 at 1]. He then sent that video to Starkey, who was working in another area of the plant that night. [*Id.*] Starkey states that he received the video from Remedies that appeared to show Walker sleeping on October 14, 2016 and took a screenshot of that video using his cellphone. [Record Document 15-8 at 2-3, ¶ 6]. He then confirms that the image[3] is a "true and correct copy of the screenshot" he took that night. [*Id.*] Combined, this is sufficient evidence for the Court to conclude that the image is what ETP claims it to be—a screenshot from a video of Walker allegedly sleeping at work on October 14, 2016.

Having concluded that the photographs are properly authenticated, the Court must address Walker's relevance objection. Walker asserts that the images are "irrelevant to the decision to terminate Plaintiff's employment because, . . . at the time the decision was made to terminate Plaintiff's employment – it is admitted that the photographs were not dated or time stamped and ETP did not know when or why the same had been taken." [Record Document 18-1 at 2].

---

[2] The image is identified in and attached to Starkey's declaration as Exhibit 5-3. [Record Document 15-8 at 9].

[3] The image is identified in and attached to Starkey's declaration as Exhibit 5-2. [Record Document 15-8 at 8].

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. While Walker may be correct that ETP lacked details and dates about the photographs at the time it decided to terminate Walker, that does not make the photographs irrelevant to determining whether ETP had a legitimate reason to terminate Walker's employment. Both McClain and McKee saw the images on or before January 24, 2017, nearly two months before Walker's termination. [Record Documents 15-5 at 2-3 and 15-6 at 2]. McKee states that he relied on what he saw in those pictures when deciding that Walker should be terminated, [Record Document 15-6 at 3], and thus the images are relevant because they tend to prove whether McKee was reasonable to conclude that Walker engaged in the alleged behavior.

Because the Court concludes that the images in question are both authenticated and relevant, Plaintiff's motion to strike [Record Document 18] is **DENIED**.

## II.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine

---

[4] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will

be deemed admitted, for purposes of the motion, unless controverted as required by this rule."
*Id.*

## III.  Plaintiff's FMLA Interference Claims

Under the FMLA, it is "unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). To establish a prima facie case under the interference clause, a plaintiff "must show: (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017)).

ETP challenges Walker's ability to establish the last element of his prima facie case—that ETP denied him any benefits to which he was entitled under the FMLA. [Record Document 15-1 at 10-11]. Walker argues that ETP's decision to lower his bonus payment while he was out on FMLA leave and its failure to reinstate him after leave both amount to the denial of benefits guaranteed to him by the FMLA. [Record Document 17-1 at 17]. Because ETP only challenges whether Walker was denied a benefit, the Court will consider the other elements of Walker's prima facie claim established.

### a.  Plaintiff's Bonus Payment

While on leave, Walker's annual bonus payment was reduced by $1,000. ETP contends that the bonus payment was reduced because of Walker's performance issues, including sleeping on the job. [Record Document 20 at 4].

The FMLA prohibits employers from denying their employees benefits that were accrued before taking FMLA leave, but it does not entitle an employee to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). Under this standard, Walker's bonus reduction was not a denial of any benefit owed to him if it would have been denied to him had he not taken FMLA leave. *Cf. Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 681-82 (5th Cir. 2013) (holding that an employee is not entitled to reinstatement under the FMLA if the employee was otherwise terminated for legitimate reasons unrelated to actions protected by the FMLA). Walker conceded that ETP's decision to reduce his bonus was based on his alleged performance issues which occurred before he took FMLA leave. [Record Document 17-2 at 17]. ETP also presented evidence that it has reduced at least one other employee's bonus in the past for performance issues. [Record Document 15-6 at 3]. Walker has presented no evidence, besides a denial that he slept at work, to suggest that his bonus would not have been reduced for those same reasons had he not been on FMLA leave when the bonuses were calculated. Thus, Walker has failed to show that he was denied a benefit to which he was entitled under the FMLA, and his interference claim based on the reduction of his bonus is **DISMISSED with prejudice**.

### b. **Plaintiff's Termination**

Walker also argues that ETP interfered with his right to be reinstated to his position after his FMLA leave by terminating him the day he returned from leave. [Record Document 17-1 at 17]. The FMLA guarantees employees the right to be restored to the position they held when the leave commenced. 29 U.S.C. § 2614(a)(1)(A). This right, however, is not absolute.

*Shirley*, 726 F.3d at 681. "[D]enying reinstatement to an employee whose right to restored employment had *already been extinguished*—for legitimate reasons unrelated to his efforts to secure FMLA leave—does not violate the Act." *Id.* at 682 (emphasis in original). If the employer presents a legitimate reason for the termination, the employee must present evidence that the employer's reason was pretextual. *Id.* at 683.

## 1. **Legitimate Reasons**

ETP's consistently-stated reason for Walker's termination is sleeping at work prior to January 20, 2017. [Record Documents 15-6 at 3-4 and 15-7 at 6]. Brandt explains that this is a violation of the company's "Workplace Conduct" policy which prohibits "loitering or loafing during work time." [Record Document 15-7 at 4, 6, and 30]. The policy further states that "unacceptable conduct may subject the offender to disciplinary action, up to and including discharge, in the Company's sole discretion." [Record Document 15-7 at 30]. ETP has therefore met its burden of producing a legitimate reason unrelated Walker's FMLA leave for his termination.

## 2. **Pretext**

The Court must next determine if Walker has created a genuine issue of material fact relevant to whether ETP's stated reason is pretextual. To demonstrate pretext, a plaintiff must show that the employer's proffered reason for the termination is "false or 'unworthy of credence.'" *DeVoss*, 903 F.3d at 492 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)). Pretext must be shown by a preponderance of the evidence. *Tatum v. So. Co. Servs. Inc.*, 930 F.3d 709, 713 (5th Cir. 2019).

Throughout his brief, Walker raises a variety of arguments and facts that may support a finding that ETP's stated reasons are pretextual. Among these are: the quality of the information ETP relied on to justify Walker's termination, McClain's changing intentions regarding Walker's employment status, the timing of Starkey's and McClain's production of the written report relied on in his termination, Walker's lack of disciplinary history, the treatment of similarly situated employees, ETP's failure to follow its own internal policies, and the temporal proximity between Walker's termination and his return from FMLA leave. [Record Document 17-1 at 21, 24]. The Court will address each of these individually.

### i.  Quality of Investigation

Walker first argues that the fact that ETP decisionmakers "had nothing more than hearsay allegations and uncorroborated pictures [on which] to base a decision that Walker was actually 'sleeping' on the job" is evidence of pretext. [Record Document 17-1 at 24]. "In cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but 'whether the employer reasonably believed the employee's allegation and acted on it in good faith.'" *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (quoting *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993)).

The alleged defects in ETP's evidence do not rise to the level of demonstrating that ETP's reliance on Starkey's report and images was unreasonable. McClain had an employee come to him with a detailed report of what occurred during the previous night's shift. [Record Document 15-8 at 3-5]. The employee supplemented his report with three images that appeared to show Walker sleeping in at least two different locations in the plant. [Record Document 15-

8 at 2-3, 5, 7-10]. Of note, even Walker admits that when confronted with the images, he thought it was "pretty hard to deny" it was him in one of the pictures. [Record Document 17-4 at 34]. Considered together, it is reasonable for an employer to conclude that a report of an employee sleeping supported by images of the employee reclined in a chair with his feet on a desk and eyes closed, lying down across two office chairs with his eyes closed, and lying on a table with a cover over his eyes is a credible report.

### ii. **McClain's Changed Intentions**

Walker also argues that McClain's deposition testimony demonstrates that prior to Walker requesting FMLA leave on January 24, 2017, McClain intended only to discuss Walker's performance with him and give him the opportunity to improve. [Record Document 17-1 at 24]. The deposition testimony cited to support Walker's assertion does not support such a conclusion, however. [Record Document 17-1 at 24, n.97]. In the cited portion of his deposition, McClain testified that prior to January 20, 2017 he spoke with his supervisor, McKee, about Walker's performance issues and told McKee that he "need[ed] to work with [Walker]." [Record Document 17-5 at 18]. McClain's deposition does not clearly state that he expressed the same intentions to McKee after Starkey's January 20, 2017 report that Walker was sleeping on the job. [Record Document 17-5 at 18-20]. This is not sufficient to create a genuine issue of fact about McClain's intentions regarding Walker's continued employment between January 20, 2017, when Starkey reported Walker, and January 24, 2017, when Walker requested leave. Furthermore, McClain's intentions are not clearly relevant when it was McKee, not McClain, who made the ultimate decision to terminate Walker's employment, and there is no evidence that McClain was involved in that decision. [Record Document 17-6 at 13].

### iii.    Written Summary Timing

Walker asserts that there are disputed facts remaining about when Starkey verbally reported Walker's behavior and when McClain asked Starkey to formally record his report. [Record Document 17-1 at 21]. He has failed to support either assertion with record evidence. Both McClain and Starkey testified that Starkey initially reported Walker's behavior on January 20, 2017 when he was called in on his night off to assist at the plant. [Record Documents 17-5 at 18-19 and 17-7 at 9-10]. Walker presented nothing to dispute this and, thus, there is no genuine dispute as to when Starkey made the verbal report.

McClain testified that on the night of January 20, 2017, he asked Starkey to record his verbal report the next time he worked, which was January 24, 2017. [Record Document 17-5 at 20]. Starkey stated he could not remember if McClain asked him to write it on January 20 or January 24. [Record Document 17-7 at 10]. This does not create a genuine dispute regarding this fact, however, because Walker presented no evidence that actually refutes McClain's statement that he requested the summary on January 20, 2017. This means that the timing of when the report was written is not probative of pretext because it was requested prior to what Walker was allegedly discriminated against for, taking FMLA leave.

### iv.    Similarly Situated Employees

Walker identifies four other ETP employees that he alleges were similarly situated to him at ETP yet treated differently—Starkey, Remedies, Jeremy Pearce ("Pearce"), and Steven Stroud ("Stroud"). [Record Document 17-1 at 13]. He contends that all four men also slept at work but were not investigated or penalized for the behavior. [Record Document 17-1 at 13-14]. Walker states that he reported in September 2016 to McClain that employees were sleeping.

[Record Document 17-4 at 16]. McClain and McKee deny receiving such reports or having any knowledge of other employees sleeping. [Record Documents 15-5 at 6-7 and 15-6 at 5-6]. Walker also argues that, had the men been investigated, they would have admitted to engaging in identical behavior. [Record Document 17-1 at 20].

"Employees are similarly situated when they 'held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'" *Garcia v. Prof'l Contract Serv's, Inc.*, 938 F.3d 236, 244 (5th Cir. 2019) (quoting *Lee vs. Ks. City So. Rwy. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009)). The conduct the employer uses as the justification for the employee's termination must be "nearly identical" to that of the comparable employee who received a dissimilar employment outcome. *Id.* If the differences in treatment are accounted for by differences between the plaintiff's conduct and the conduct of the allegedly similarly situated employees, then the employees are not considered similarly situated for purposes of comparison in an employment discrimination action. *Lee*, 574 F.3d at 260.

Walker has presented evidence that the identified men had essentially the same job and shared the same supervisor. [Record Documents 17-7 at 2, 17-8 at 2, 17-9 at 2, and 17-10 at 2]. He has not presented evidence sufficient to conclude that the other men have "essentially comparable violation histories." *Garcia*, 938 F.3d at 244.

First, Walker's deposition failed to specifically identify which men, besides Starkey, he reported were sleeping at work in September 2016. [Record Document 17-4 at 16]. Without evidence that Walker reported each of the men, the Court cannot conclude that all of the

identified men had even one coworker report that they were sleeping at work, which means that they do not have nearly identical violation histories to Walker's.

Second, even assuming that he reported all of the aforementioned employees, Walker has failed to provide evidence that he reported behavior analogous to the behavior for which he was terminated. Starkey's report against Walker alleged that Walker would intentionally sleep as long as six hours of a twelve-hour shift. [Record Document 15-8 at 10]. This is categorically different than the "dozing" or "napping" that Starkey, Pearce, Stroud, or Remedies admitted to in their depositions. [Record Documents 17-8 at 3-4, 17-9 at 4-7, and 17-10 at 3-5]. As those men described it, if they would "sleep" at work, it was unintentional falling asleep or short term resting of their eyes from looking at computer screens. [*Id.*] They denied purposefully sleeping for multiple hours of their shift. [*Id.*]

Finally, Walker's situation varied from that of the other men because ETP had pictures of Walker's behavior. Walker does not allege that ETP, faced with multiple images of another employee sleeping, ignored such a report. Any differential treatment Walker received is therefore accounted for by the difference in his conduct and the proof with which ETP was presented.

Walker also argues that the fact that Remedies and Starkey were not punished for violating ETP's picture policy is evidence of pretext. [Record Document 17-1 at 20]. As explained by Brandt, ETP's policy against using cameras on the worksite has an exception for taking pictures of safety issues. [Record Document 15-7 at 9]. As Walker himself admits, sleeping on the job may lead to "catastrophic occurrences," [Record Document 15-4 at 6], and therefore it is not clear that the employees were violating ETP policy such that discipline was

warranted. Further, the violations are of a different nature. One is a ban on taking images in the workplace, largely based on concerns about privacy, sexual harassment, productivity, and protecting proprietary information while the other is a ban on sleeping at work based on safety concerns. [Record Documents 15-7 at 32 and 17-5 at 34-35]; *Lee*, 574 F.3d at 260 (stating that it is proper to consider the relative seriousness of different employees' allegedly comparable offenses); *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (holding that employees are not similarly situated when they violate different company policies). Because these are not comparable violations, they cannot be used to compare ETP's response.

### v. ETP's Policies

Walker next argues that his termination violated ETP's own policies regarding progressive discipline and investigation of complaints. [Record Document 17-1 at 20]. In support of this, Walker cites to Section 9 of the employee handbook which lays out the steps that may be taken before an employee is terminated. [Record Document 15-7 at 28-30]. He also cites to ETP's stated policy that investigations are usually conducted before disciplinary action is taken, and that the investigation includes allowing the employee to respond. [Record Document 15-7 at 29].

ETP denies that Walker's termination violated any provision of the employee handbook. [Record Document 20 at 7]. ETP contends that its actions conformed to the provisions cited to by Walker because they allow the company to terminate any employee at any time without first engaging in progressive discipline. [Record Document 15-7 at 28-29]. It argues that it investigated prior to Walker's termination and that Walker admitted he was the individual pictured. [Record Document 20 at 7]. Ultimately, ETP states that it terminated Walker for

"repeatedly and excessively" violating its Workplace Conduct Policy. [Record Documents 15-7 at 6 and 20 at 7]. ETP determined that sleeping in the workplace posed a "safety risk of a gas leak, fire or explosion" and felt termination without progressive discipline was warranted by Walker's actions. [*Id.*]

It is true that "an employer's failure to follow its own policies may be probative of discriminatory intent," *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 336 (5th Cir. 2005), but the Court cannot conclude that ETP actually violated its policies. The policies state that ETP need not always engage in progressive discipline and investigation and ETP has presented a legitimate reason why it did not—concerns that continued sleeping on the job posed a risk to Walker, other employees, and the plant. Therefore, the Court will not consider ETP's alleged policy violation as evidence of pretext. *See Shirley*, 726 F.3d at 683 (refusing to infer pretext when an employer's interpretation of its policy was reasonable).

### vi. Timing of Walker's Termination and Disciplinary Record

Having rejected the validity of Walker's other arguments about why his termination was pretext for discrimination, Walker is left with two facts to support an inference of pretext. First, his termination occurred immediately after he returned from FMLA leave. Second, he had no documented disciplinary history. Taken together, this is not sufficient to establish by a preponderance of the evidence that ETP's stated reason for Walker's termination is false or unworthy of credence.

When a plaintiff relies on temporal proximity to prove pretext, the "suspicious timing" must be coupled with "other significant evidence of pretext." *Garcia*, 938 F.3d at 244 (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)). "This standard can be

met when the 'plaintiff had highly positive performance reviews up until'" the protected activity "and then suffered a sharp decline in treatment immediately after the protected conduct occurred." *United States ex rel King v. Solvay Pharms., Inc.*, 871 F.3d 318, 334 (5th Cir. 2017) (quoting *Khalfani v. Balfour Beatty Cmtys, L.L.C.*, 595 F. App'x 363, 366 (5th Cir. 2014)). The *Garcia* court, summarizing prior holdings involving temporal proximity, noted that "evidence of temporal proximity combined with positive performance reviews was not enough to create an issue of fact regarding pretext." *Garcia*, 938 F.3d at 244 (citing *Solvay Pharms., Inc.*, 871 F.3d at 334). It contrasted this with a case where temporal proximity, combined with a "plaintiff's dispute of events leading up to her termination," statements of other employees warning the plaintiff against engaging in the protected activity, and "employees who did not receive negative reviews even though they had the same problems that the plaintiff received poor reviews for" was sufficient to establish pretext. *Garcia*, 938 F.3d at 244 (citing *Shackelford*, 190 F.3d at 409).

Walker's case is weaker than the one in which temporal proximity and positive performance reviews was found to be insufficient. Assuming that Walker had no performance issues before his termination, which ETP disputes, Walker has still not presented any evidence of *positive* performance reviews. Viewed in the light most favorable to Walker, he has presented evidence that he was a satisfactory employee in the months that he worked at the Dubberly Plant. This does not rise to the level of being "other significant evidence of pretext" that can combine with suspect timing to satisfy Walker's burden of demonstrating that his termination was pretextual. Walker's interference claim based on the failure to reinstate him is **DISMISSED with prejudice**.

## IV. Plaintiff's FMLA Retaliation Claim

Walker also alleges that his termination was the result of ETP's retaliation against him for taking FMLA leave. [Record Document 1 at 4]. ETP contends first that Walker cannot establish a prima facie case of retaliation because he cannot demonstrate that he was treated less favorably than a similarly situated employee who did not request leave. [Record Document 15-1 at 12]. Second, ETP argues that even if Walker could establish a prima facie case, his retaliation claim must fail because Walker cannot prove that ETP's stated non-discriminatory reason for his termination is pretextual. [Record Document 15-1 at 16-19].

To state a claim for retaliatory discharge, a plaintiff must establish that: "(1) [he] engaged in a protected activity, (2) the employer discharged [him], and (3) there is a causal link between the protected activity and the discharge." *Tatum*, 930 F.3d at 713 (quoting *Richardson*, 434 F.3d at 332). When there is no evidence of discriminatory intent and the employee has established a prima facie case, the Court must apply the *McDonnell Douglas* framework. *Tatum*, 930 F.3d at 713. Under this framework, the burden first "shifts to the employer to articulate a legitimate, nondiscriminatory reason" for its action. *Id.* (quoting *Richardson*, 434 F.3d at 332). If the employer does so, the "burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is pretext for discrimination." *Id.* (quoting *Richardson*, 434 F.3d at 332-33). For FMLA retaliation claims, a plaintiff may also satisfy his burden by demonstrating that discrimination was a motivating factor in his termination. *Richardson*, 434 F.3d at 333. This requires establishing that, even though discrimination was not the only reason for the adverse employment action, "[it] actually play[ed] a role in the employer's decision making process and ha[d] a determinative influence on the outcome." *Delaval v. PTech*

*Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479-80 (5th Cir. 2016) (quoting *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 702 (5th Cir. 2014)). If proven, the burden shifts back to the employer to "prove that it would have taken the same action despite the discriminatory animus." *Id.* The employer's burden at this step is "effectively that of proving an affirmative defense." *Id.*

The Court will assume, *arguendo*, that Walker has established his prima facie case of retaliation. As previously discussed, ETP has stated a legitimate, non-discriminatory reason for Walker's termination. The Court has also already concluded that Walker has not met his burden of establishing that Walker's termination was pretextual, and thus the Court must determine if Walker has established that his FMLA leave was a motivating factor in his termination.

The Court's earlier analysis of Walker's evidence presented to support pretext is equally applicable to a motivating factor analysis, so the Court is left to consider if the same two facts provided to support a finding of pretext can support a finding that taking FMLA leave was a motivating factor for Walker's termination—temporal proximity and the lack of disciplinary history.

The Fifth Circuit has found enough evidence to demonstrate that an adverse employment action was motivated by discrimination when a plaintiff's evidence included job performance criticisms that only began after suffering a seizure at work and multiple comments about being a liability or potentially being "in trouble" if the plaintiff's disability manifested itself at work. *LHC Group, Inc.*, 773 F.3d at 703. Similarly, in *Richardson v. Monitronics International, Inc.*, the Fifth Circuit found that temporal proximity, combined with a comment about firing the plaintiff and another comment that the employer had "accommodated her enough" prior

to the plaintiff's termination supported a finding that discrimination was a motivating factor in the termination. *Richardson*, 434 F.3d at 335.

Walker presents less evidence than what the *Richardson* or *LHC Group, Inc.* courts accepted to prove that discrimination or retaliation played a determinative outcome in an employee's termination. For example, he has not presented evidence that any decisionmakers at ETP—like McClain, McKee, or Brandt—made any suspicious comments. His lack of documented disciplinary history also fails to support a finding that discrimination or retaliation was a motivating factor. Unlike in *LHC Group, Inc.*, Starkey reported Walker's behavior and McClain requested a written report before Walker requested leave, which means there is no evidence that he began accumulating negative performance reviews or a disciplinary history only after engaging in a protected behavior. Thus, Walker has failed to establish that taking FMLA leave was a motivating factor in ETP's decision to terminate him, and Walker's FMLA retaliation claim is **DISMISSED with prejudice**.

## V. Plaintiff's ADA Claim

Walker next alleges that his termination constitutes disability discrimination in violation of the ADA. [Record Document 17-1 at 25-27]. ETP argues that summary judgment in its favor is appropriate because Walker cannot establish that he had a disability or that ETP regarded him as having a disability. [Record Document 15-1 at 20-22]. In the alternative, it argues that Walker cannot prove that his termination was because of his disability, that he was treated less favorably than non-disabled employees, or that ETP's stated reasons for his termination are pretextual. [Record Document 15-1 at 21-24].

The ADA prohibits an employer from discriminating against a "qualified individual" on the basis of a "disability." 42 U.S.C. § 12112(a). Without direct evidence of discrimination, establishing a prima facie case under the ADA requires a plaintiff to show that: "(1) he has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability." *Caldwell*, 850 F.3d at 241. If a plaintiff can meet this burden, a "presumption of discrimination arises, and the employer must 'articulate a legitimate non-discriminatory reason for the adverse employment action.'" *Id.* (quoting *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016)). If the employer does so, the plaintiff then again has the burden of producing evidence sufficient for a jury to find that the employer's reason is pretextual. *Id.* Pretext can be shown "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (quoting *Jackson*, 602 F.3d at 378-79). Additionally, the Fifth Circuit has held that for claims raised under the ADA, "an employee who fails to demonstrate pretext can still survive summary judgment by showing that an employment decision was 'based on a mixture of legitimate and illegitimate motives . . . [and that] the illegitimate motive was a motivating factor in the decision.'" *LHC Grp., Inc.*, 773 F.3d at 702 (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005).

In this case, the Court need not address whether Walker can establish a prima facie case for disability discrimination because, as previously discussed, the Court has concluded that Walker cannot establish the final element in his claim—that discrimination was a motivating factor in his termination. According to Walker, ETP was first informed of his substance abuse problem when he requested FMLA leave for the purpose of seeking treatment on the morning

of January 24, 2017. [Record Document 15-4 at 4]. This means that ETP could not have acted with discriminatory animus based on the belief that Walker was disabled due to his substance abuse problem at any time prior to January 24, 2017. Thus, the analysis relevant to FMLA retaliation and interference is equally applicable to the disability discrimination analysis. Further, Walker presented no evidence about whether the allegedly similarly situated coworkers faced substance abuse problems, which means the Court is unable to compare whether the men are outside of Walker's alleged protected class as an individual regarded as disabled by his employer. Walker's disability discrimination claim is **DISMISSED with prejudice**.

## VI.  Plaintiff's ADEA Claim

Finally, Walker alleges that his termination was age-based discrimination in violation of the ADEA. [Record Document 17-1 at 25-28]. ETP contends that Walker cannot establish a prima facie case because he has no evidence that he was treated differently than similarly situated younger employees or evidence that his termination was otherwise connected to his age. [Record Document 15-1 at 26-27]. ETP also argues that, even if Walker could establish a prima facie case of age discrimination, his claim fails because he cannot demonstrate that ETP's stated reason for his termination is pretextual. [Record Document 15-1 at 28-29].

Like Walker's other claims, the ADEA utilizes the *McDonnell Douglas* framework when a plaintiff's claim is not based on direct evidence of discrimination. *Jackson*, 602 F.3d at 377-78. A key distinction between its application in the ADEA context is that a plaintiff must demonstrate that age was the "but-for" cause of the adverse employment action. *Id.* at 377. A prima facie case of age discrimination requires a plaintiff to show that: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of his

discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Id.* (quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)).

Because the Court concludes, as previously explained, that Walker cannot meet his burden of establishing that ETP's stated reasons for his termination were pretextual, the Court need not address the issue of whether Walker has stated a prima facie case of age discrimination. Additionally, Walker's case for pretext is even weaker in regard to his ADEA claim because Walker has failed to identify the ages of all of the coworkers he argues are similarly situated to him. [Record Documents 17-7, 17-8, 17-9, and 17-10]. Without this information, the Court cannot consider whether the men are outside of Walker's protected class such that their disparate treatment would be relevant to a pretext analysis. Walker's ADEA claim is **DISMISSED with prejudice.**

## CONCLUSION

For the aforementioned reasons, Defendant's motion [Record Document 15] is **GRANTED**. Plaintiff's claims are **DISMISSED with prejudice**. Plaintiff's motion to strike [Record Document 18] is **DENIED**. A judgment consistent with this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this ____ day of February, 2020.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE